Filed 8/31/23  In re D.B. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re D.B., et al., Persons Coming Under the Juvenile Court Law. | B320301<br><br>(Los Angeles County Super. Ct. Nos. 20LJJP00624, 20LJJP00624B, 20LJJP00624C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>BRITTANY B.,<br><br>      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Donald A. Buddle, Judge  Affirmed.

David M. Yorton, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Avedis Koutoujian, Deputy County Counsel, for Plaintiff and Respondent.

## MEMORANDUM OPINION[1]

Brittany B. (mother) appeals the juvenile court's denial of her motion requesting a bonding study after reunification services were terminated.  We affirm.

Under Evidence Code section 730, a court may appoint an expert to study the bond between a parent and a child.  (See *In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1084.)  "There is no requirement in statutory or case law that a court must secure a bonding study as a condition precedent to" terminating parental rights.  (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339.)  A juvenile court has broad discretion over whether to order a bonding study.  (*Id.* at pp. 1339-1340.)  "The applicable standard of review is whether, under all the evidence viewed in a light most favorable to the juvenile court's action, the juvenile court

---

[1]    We resolve this case by memorandum opinion.  (Cal. Stds. Jud. Admin., § 8.1.)  We do not recite the factual and procedural background because our opinion is unpublished and the parties are familiar with the facts of the case and its procedural history.  (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of trial court's decision "does not merit extensive factual or legal statement"].)  Undesignated statutory references are to the Welfare and Institutions Code.

could have reasonably refrained from ordering a bonding study." (*Id.* at p. 1342.)

Our Supreme Court has encouraged juvenile courts to "seriously consider, where requested and appropriate, allowing for a bonding study or other relevant expert testimony." (*In re Caden C.* (2021) 11 Cal.5th 614, 633 fn. 4 (*Caden C.*).) This statement was included in a discussion about the beneficial parent-child relationship exception in section 366.26, subdivision (c)(1)(B)(i). Under that section, when reunification services have been terminated and the "court determines . . . by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption." (§ 366.26, subd. (c)(1).) However, if the court "finds that adoption of the child or termination of parental rights is not in the best interest of the child" because of an ongoing beneficial parent-child relationship, the court shall "follow a process to select among permanent plans other than adoption." (*Caden C., supra*, 11 Cal.5th at p. 631, citing § 366.26, subd. (c)(4)(A).) There are "three elements the parent must prove to establish the exception: (1) regular visitation and contact, and (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights would be detrimental to the child." (*Caden C., supra*, 11 Cal.5th at p. 631.) The Supreme Court stated in a footnote that a bonding study or other expert evidence may be useful in assessing whether the child would benefit from an ongoing relationship with the parent. (*Id.* at p. 633, fn. 4.)

Here, mother argues that under *Caden C.*, a bonding study was required to assist the juvenile court in determining whether the beneficial parent-child relationship exception might apply

3

here. We disagree. At the time the juvenile court denied mother's request, there was ample evidence in the reports about the quality of mother's relationship with the children. A. had been removed from mother at the hospital shortly after her birth in September 2020. D., nearly two years old, was removed from mother's care at the same time.[2] Mother's visitation with the children was monitored from the October 9, 2020 detention hearing onward.

Although mother's visitation was initially unremarkable, it became erratic over the life of the case. Detailed service logs were submitted to the court, summarizing the monitors' observations of mother's visits with the children, including that mother cooked for, played with, and appropriately interacted with the children. The monitors also noted that D. resisted going to visits with mother, mother struggled to address the needs of two small children in her care at once, mother lacked a sense of urgency when addressing the children's needs, mother favored D. over A., and D. did not express sadness when visits ended. In addition, at the review hearing on September 28, 2021, mother testified about her visits with the children, including what they do together during visits.

Thus, at the time the juvenile court denied mother's request for a bonding study on May 4, 2022, mother's visitation with the children had been monitored for approximately 17 months, and evidence of the parent-child relationship was before the court. When "the parent and child have been in the dependency process for [twelve] months or longer, . . . the nature

---

[2] Mother's eight-year-old daughter was living with her father and is not at issue in this appeal.

4

and extent of the particular relationship should be apparent. Social workers, interim caretakers and health professionals will have observed the parent and child interact and provided information to the court." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) Although mother offers some general assertions that bonding studies provide "critical" evidence, she provides no authority or evidence suggesting that a bonding study was warranted under the circumstances here, with extremely young children, one of whom had never lived with mother. (See *In re M.V.* (2023) 87 Cal.App.5th 1155, 1179 [bonding studies "are particularly informative in cases like *Caden C.*, in which the child was eight or nine years old and had a complex parental relationship with both positive and negative aspects"]; *Caden C., supra*, 11 Cal.5th at p. 632 [when assessing the parent-child relationship, courts consider factors such as "'[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs'"].)[3]

In short, mother has not demonstrated that the juvenile court abused its discretion in denying her request for a bonding study.

---

[3] Mother also contends the juvenile court's denial of her request for a bonding study was "a quintessential denial of due process." She offers no legal support for this position, and therefore it has been forfeited. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court'"].)

## DISPOSITION

The juvenile court's May 4, 2022 order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


CURREY, P.J.


MORI, J.